IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PREBLE – RISH HAITI, S.A.,** § § § | |
| Plaintiff, § § | Civil Action No. _____ |
| v. § § | |
| § | Filed under Rule 9(h) Fed. R. Civ. P. |
| **REPUBLIC OF HAITI, BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT,** § § § § | (ADMIRALTY) |
| Defendants. § § § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

Plaintiff, Preble-Rish Haiti, S.A. ("PRH"), by and through its attorneys Blank Rome LLP, as and for its Verified Complaint against the Defendants Republic of Haiti and Bureau De Monétisation De Programmes D'aide Au Développement (collectively "BMPAD"), *in personam*, allege as follows:

### JURISDICTION AND VENUE

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

2. Venue is proper in this District because there is, or will be during the pendency of this action, property of or due and owing to BMPAD within or moving through this District as will be more fully discussed herein.

3. BMPAD is not registered to do business in Houston. As such, BMPAD cannot be found in this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims.

## THE PARTIES

4. PRH is a company organized under the laws of Haiti with a principal place of business located at Hexagon Building, 5th Fl, Angle Rues Clerveaux and Darguin, Pétion Ville, Haiti.

5. BMPAD are foreign entities organized under the laws of Haiti, with a principal place of business located at No.12 Boulevard Harry Truman, Port-au-Prince, Haiti.

## PRELIMINARY STATEMENT

6. PRH commences this action to recover **$27,290,086.91** from BMPAD, exclusive of attorney's fees and interest. To date, BMPAD has refused to pay PRH for fuel PRH delivered to Haiti by vessel and for damages resulting from BMPAD's breach of three maritime contracts for the delivery of fuel to Haiti.

7. PRH seeks a Rule B attachment of BMPAD's assets in this District in aid of arbitration, which PRH commenced in New York. The three maritime contracts drafted by BMPAD all include the following identical arbitration provision:

> **Article 20. ARBITRATION AND LEGISLATION**
>
> In the event of a dispute between the Buyer and Seller under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators. *The Party initiating the arbitration shall provide written notice of its intention to submit the matter to arbitration.* Such notification shall contain a statement identifying the request for arbitration and specifying the arbitrator appointed by the initiating Party. Within ten (10) days of such notice of arbitration, the other Party will identify its appointed arbitrator. If such Party fails to appoint an arbitrator within the applicable 10-day period and fails to give timely notice of such appointment to the Initiating Party, then the initiating Party shall also be entitled to appoint this second arbitrator. The third arbitrator will be chosen by the two arbitrators thus selected. Each Party shall bear and pay the expenses of the arbitrator appointed by (or for) it and the expenses of the third arbitrator shall be limited and paid equally by the Parties. The decision of the arbitrators shall be final, conclusive and binding on all Parties. Judgment upon such award may be entered in any court of competent jurisdiction. For disputes under $25,000 USD, an arbitrator will be used as agreed by both

Parties. If the two Parties are unable to agree on an arbitrator, the Seller will appoint an appropriate arbitrator. No arbitrator shall be an employee, representative or agent of a Party and each shall reasonably believe that the selecting Party has the experience, education and expertise in the matters to which the claim relates to enable that person to competently perform such arbitration function.

8. On November 20, 2020, PRH served a Notice Demanding Arbitration (the "Demand") on BMPAD.

9. Despite the unambiguous arbitration clause in all three contracts, BMPAD refuses to arbitrate the dispute.

10. BMPAD filed, albeit untimely, a Petition to stay the arbitration and motion for preliminary injunction and/or temporary restraining order on December 22, 2020 – 32 days after the first Demand and 21 days after the Notice of Appointment of Second Arbitrator. BMPAD's Petition and motion are untimely under New York CPLR § 7503.

11. BMPAD's untimely Petition and motion for preliminary injunction and/or temporary restraining order will not be heard by the NY State Court until July 27, 2021.

12. At present, there is no Court order staying the arbitration and, to avoid irreparable prejudice to PRH, the arbitration is proceeding.

13. If PRH does not obtain security it will be extremely difficult for PRH to enforce a final arbitral award against BMPAD, who have advised the arbitration panel they will not honor any of its decisions.

14. Accordingly, one of the urgent reasons PRH desires an award of security via the Rule B process is the very substantial concern that when the arbitration is eventually concluded PRH will not be able to enforce the award against BMPAD.

15. Upon information and belief, BMPAD maintains assets in the possession of garnishee BB Energy USA ("BB Energy"), located within this District at the following address:

3

>BB Energy USA LLC
>San Felipe Place, Suite 1075
>2229 San Felipe Street
>Houston, Texas 77019 – USA
>T: +1 713 800 5000
>F: +1 713 800 5001
>E: info@bbenergy.com

16. In particular, upon information and belief, BMPAD prepays BB Energy for fuel and, thus, BB Energy is presently in possession of funds belonging to BMPAD.

## THE FACTS[1]

17. This dispute arises under three contracts entered into on May 13, 2020, by and between PRH and the BMPAD. *See* Ex. 1, Leconte Aff. at ¶ 2.

### I. The Fuel Oil Contracts

18. PRH agreed to source, ship and deliver diesel fuel, jet fuel and gasoline to BMPAD under the terms and conditions of the three contracts. All three fuel oil contracts were drafted by BMPAD. And, all three contracts provided that "the deliveries of which will be spread over a period of six months, remains in force for a period of one year from the date of signature hereof." *See* Exs. A-C[2] to the Leconte Aff.; *see also* Ex. 1 at ¶¶ 3 & 4.

19. Article 12 of each of the three contracts provided that "[t]he buyer [BMPAD], at his expense, will provide the seller [PRH] with an international bank letter of credit (ESP 98) of irrevocable support issued by the Bank of the Republic of Haiti and confirmed by an international bank. The confirming bank must have a first quality credit rating acceptable to the seller."

---

[1] A true and correct copy of the Affirmation of Josue Leconte dated January 6, 2021 is attached as Ex. 1. (the "Leconte Aff.")
[2] References to Exhibits herein refer to the Exhibits attached to Leconte Affirmation.

20. BMPAD failed to provide the required letter of credit and PRH agreed that it would not require the letter of credit so long as BMPAD made full prepayment of each shipment pursuant to a provisional invoice delivered monthly by PRH prior to shipment.

21. Accordingly, the three contracts were amended on May 19, 2020 by an agreement entitled "Amendment No. 1 To The Three Contracts, Each Dated 13 May 2020, Concerning The Supply of Diesel, Mogas 87 And Jet 54 To The Monetization Office of Development Assistance Programs (THE BMPAD) of The Republic of Haiti." *See* Ex. D to the Leconte Aff.; *see also* Ex.1 at ¶ 5.

22. BMPAD drafted contracts all included the identical arbitration provision. *See* Ex. 1 at ¶ 6.

23. Having the ability to arbitrate disputes outside of Haiti was an essential inducement to PRH entering into the three contracts with BMPAD because PRH was sourcing and shipping the diesel, jet fuel and gasoline from outside of Haiti. And, it made commercial sense not to have disputes decided in Haiti where the government has complete control of the courts. Rather, it was critically important that PRH have a neutral and sophisticated international trade forum, such as New York, to hear all disputes involving the contracts. PRH would not have agreed to the contracts without the arbitration clause. *See* Ex. 1 at ¶ 7.

24. The fuel contracts provided that PRH would make 6 monthly shipments of diesel, jet fuel and gasoline. *See* Ex. 1 at ¶ 8. Under the contracts, BMPAD would provide PRH with the monthly quantities of diesel, jet and gasoline they required, which was referred to as an "Order." The parties would then agree to a schedule of shipments for the month. Thereafter, PRH would issue a provisional invoice to BMPAD for the amount of the prepayment required for the scheduled

5

monthly shipments. Quantities would be adjusted at the end of each monthly Order period with the actual quantities delivered. *See* Ex. 1 at ¶ 9.

## II. Orders, Deliveries, Invoices, & Payments

25. On or about May 19, 2020, BMPAD provided PRH with Order 001. *See* Ex. 1 at ¶ 10.

26. On May 19, 2020, PRH issued its Order 001 Provisional Invoice for the sum of $37,625,000. *See* Ex. E to the Leconte Aff.; *see also* Ex. 1 at ¶ 11.

27. On May 22, 2020 BMPAD paid on account to PRH the sum of $37,625,000 for Order 001. *See* Ex. F to the Leconte Aff.; *see also* Ex. 1 at ¶ 12.

28. On or about June 22, 2020, BMPAD provided PRH with Order 002. *See* Ex. 1 at ¶ 13.

29. On June 22, 2020, PRH issued its Order 002 Provisional Invoice for the sum of $48 million. *See* Ex. G to the Leconte Aff.; *see also* Ex. 1 at ¶ 14.

30. On June 24, 2020, BMPAD made a payment of $48 million. *See* Ex. H to the Leconte Aff.; *see also* Ex. 1 at ¶ 15.

31. On or about July 31, 2020, BMPAD provided PRH with Order 003. *See* Ex. 1 at ¶ 16.

32. On July 31, 2020, PRH issued Order 003 Provisional Invoice for the sum of $50,391,937.20. *See* Ex. I to the Leconte Aff.; *see also* Ex. 1 at ¶ 17.

33. On August 5, 2020, PRH issued Order 001 Final Invoice for the sum of $29,715,745.21. *See* Ex. J to the Leconte Aff.; *see also* Ex. 1 at ¶ 18.

34. BMPAD did not object to PRH's Order 001 Final Invoice. *See* Ex. 1 at ¶ 19.

35. In addition, on August 5, 2020, PRH issued three invoices for demurrage incurred

on the MT OSPREY, MT ALPINE LIGHT, and MT CITRON. The demurrage for all three vessels totaled $187,466.15. *See* Ex. K to the Leconte Aff.; *see also* Ex. 1 at ¶ 20.

36. BMPAD did not object to the demurrage invoices. *See* Ex. 1 at ¶ 21.

37. On August 7, 2020 BMPAD made a payment of $21 million. *See* Ex. L to the Leconte Aff.; *see also* Ex. 1 at ¶ 22.

38. On August 7, 2020 BMPAD made a payment of $15 million. *See* Ex. M to the Leconte Aff.; *see also* Ex. 1 at ¶ 23.

39. On August 17, 2020 PRH issued Order 002 Final Invoice in the sum of $40,790,686.16. *See* Ex. N to the Leconte Aff.; *see also* Ex. 1 at ¶ 24.

40. BMPAD did not object to PRH's Order 002 Final Invoice. *See* Ex. 1 at ¶ 25.

41. On August 17, 2020, PRH also issued four invoices for demurrage incurred on the MT STENA IMPRESSION, MT UNIQUE GUARDIAN, MT SILVER EBURNA and MT SUNNY BAY totaling $195,829.82. *See* Ex. O to the Leconte Aff.; *see also* Ex. 1 at ¶ 26.

42. BMPAD did not object to the demurrage invoices. *See* Ex. 1 at ¶ 27.

43. On or about August 28, 2020, BMPAD provided PRH with Order 004. *See* Ex. 1 at ¶ 28.

44. On August 28, 2020, PRH issued Order 004 Provisional Invoice for the sum of $46,734,889.74. *See* Ex. P to the Leconte Aff.; *see also* Ex. 1 at ¶ 29.

45. On September 11, 2020, BMPAD made a payment of $25 million. *See* Ex. Q to the Leconte Aff.; *see also* Ex. 1 at ¶ 30.

46. On September 23, 2020, PRH issued Order 003 Final Invoice for the sum of $45,669,623.05. *See* Ex. R to the Leconte Aff.; *see also* Ex. 1 at ¶ 31.

47. BMPAD did not object to PRH's Order 003 Final Invoice. *See* Ex. 1 at ¶ 32.

160579.06501/126151037v.1

48. On September 23, 2020, PRH issued four invoices for demurrage incurred on the MT ELKA ELEFSIS, MT STENA IMPRESSION, UACC RIYADH and MT THAMES and one invoice for deviation in the MT STENA IMPRESSION totaling $271,006.89. *See* Ex. S to the Leconte Aff.; *see also* Ex. 1 at ¶ 33.

49. BMPAD did not object to the demurrage or deviation charges. *See* Ex. 1 at ¶ 34.

50. On October 1, 2020, PRH issued Order 004 Final Invoice for the sum of $44,071,612.74. *See* Ex. T to the Leconte Aff.

51. BMPAD did not object to this invoice. *See* Ex. 1 at ¶ 35.

52. On or about October 1, 2020, BMPAD provided PRH with Order 005. *See* Ex. 1 at ¶ 36.

53. On October 1, 2020, PRH issued Order 005 Provisional Invoice for the sum of $48,721,905.54. *See* Ex. U to the Leconte Aff.; *see also* Ex. 1 at ¶ 37.

54. On October 2, 2020, BMPAD made a partial payment of $24,999,980 of which $21,734,909.74 was applied to Order 004 and $3,265,070.26 was applied to Order 005. BMPAD never paid the remainder of the Order 005 Provisional Invoice. *See* Exs. V & W to the Leconte Aff.; *see also* Ex. 1 at ¶¶ 38 & 39.

55. PRH delivered diesel, jet fuel and gasoline to BMPAD without incident for Orders 001 through 004 and part of Order 005. Throughout this period BMPAD paid PRH's invoices without objection. See Ex. 1 at ¶ 40.

**III. The Default – Order 005**

56. On September 28, 2020, PRH sent an email to BMPAD reminding them to issue the purchase order for jet fuel Order 005 due for delivery in October. BMPAD confirmed in writing that 49,000 barrels of jet fuel were expected. *See* Ex. X to the Leconte Aff.; *see also* Ex. 1 at ¶ 41.

57. On September 29, 2020, PRH received BMPAD's purchase order specifying the following product quantities for October:

- o 49,000 barrels of jet fuel / 12-14 Oct
- o 155,500 barrels of gasoline / 10-12 Oct
- o 250,000 barrels of diesel / 14-16 Oct
- o 155,500 barrels of gasoline / 22-24 Oct
- o 250,000 barrels of diesel / 28-30 Oct

*See* Ex. Y to the Leconte Aff.; *see also* Ex. 1 at ¶ 42.

58. On October 1, 2020, PRH issued its provisional invoice for Order 005. *See* Ex. Z to the Leconte Aff.; *see also* Ex. 1 at ¶ 43.

59. On October 2, 2020 the BMPAD sent a wire transfer in the amount of $24,999,980. The wired funds were applied to the balance owed on Order 004 ($21,734,909.74), while the remainder was considered as a partial payment on Order 005 ($3,265,070.26). *See* Ex. 1 at ¶ 44.

60. On October 4, 2020, PRH sent an email to BMPAD to assure them that all arrangements had been made to guarantee deliveries of diesel, jet fuel and gasoline as per agreed schedule. *See* Ex. AA to the Leconte Aff.; *see also* Ex. 1 at ¶ 45.

61. On October 5, 2020, BMPAD submitted a revised Order 005 modifying the delivery windows, with following quantity breakdown and timeline:

- o 49,000 barrels of jet A1 / 12-14 Oct
- o 155,500 barrels of gasoline / 15-17 Oct
- o 250,000 barrels of diesel / 19-21 Oct
- o 155,500 barrels of gasoline / 30 Oct-1 Nov 2020
- o 250,000 barrels of diesel / 2-4 Nov 2020

*See* Ex. BB to the Leconte Aff.; *see also* Ex. 1 at ¶ 46.

62. PRH provided BMPAD with a revised provisional invoice for Order 005 and extended the deadline until October 7, 2020 for payment. And, PRH reminded BMPAD that although PRH has allowed two vessels to deliver fuel oil prior to receiving payment under Order

004, it would no longer be acceptable. *See* Ex. CC to the Leconte Aff.; *see also* Ex. 1 at ¶ 47.

63. On October 6, 2020, PRH reminded BMPAD that payment of prior invoices was due. That same day a waiver had also been requested for the displacement of MT AQUILA L, which was being loaded with gasoline.

64. On October 7, 2020, BMPAD granted a waiver for 42,000 MT max for MT AQUILA L. *See* Ex. DD at Leconte Aff.; *see also* Ex. 1 at ¶ 48.

65. Also, on October 7, 2020, PRH provided BMPAD with a revised delivery schedule to accommodate BMPAD, resulting in PRH incurring certain financial costs. The schedule was as follows:

- 49,000 barrels of jet A1 / 12-14 Oct
- 155,500 barrels of gasoline / 12-13 Oct
- 100,000 barrels of diesel / 14 Oct
- 150,000 barrels of diesel / 20-22 Oct
- 155,500 barrels of gasoline / End of Oct
- 150,000 barrels of diesel / First days of Nov

*See* Ex. EE to the Leconte Aff.; *see also* Ex. 1 at ¶ 49.

66. On October 12, 2020, PRH sent various shipping documents to BMPAD for the MT ENDEAVOUR II and MT AQUILA L, which were heading to Haiti with jet fuel, diesel and gasoline. *See* Ex. FF to the Leconte Aff.

67. Both vessels were due to arrive on October 14, 2020. *See* Ex. 1 at ¶ 50.

68. On October 12, 2020, PRH also sent an email to BMPAD with the Q88 seeking the approval for the MT MINERVA JULIE, a vessel proposed for future shipment of diesel.

69. Approval for the MT MINERVA JULIE was received from the BMPAD shortly thereafter. *See* Ex. GG to the Leconte Aff.; *see also* Ex. 1 at ¶ 51.

70. On October 13, 2020, the Captain of the MT ENDEAVOUR II tendered Notice of Readiness at 19:30. *See* Ex. HH to the Leconte Aff.; *see also* Ex. 1 at ¶ 52.

71. On October 14, 2020, the Captain of the MT AQUILA L tendered Notice of Readiness at 0040. *See* Ex. II to the Leconte Aff.; *see also* Ex. 1 at ¶ 53.

72. BMPAD acknowledged receipt of the shipping documents for both the MT ENDEAVOUR II and MT AQUILA L. *See* Ex. JJ to the Leconte Aff.; *see also* Ex. 1 at ¶ 54.

73. On October 14, 2020, at approximately 13:42, the MT ENDEAVOUR II started discharging cargo, i.e., 95,002.37 barrels of diesel fuel and 49,136.54 barrels of jet fuel. *See* Ex. KK to the Leconte Aff.; *see also* Ex. 1 at ¶ 55.

74. On October 15, 2020 PRH wrote to BMPAD requesting payment for the provisional invoice for Order 005 and reminded BMPAD that demurrage of $20,000 per day was being incurred on the MT AQUILA L, in addition to interest as per clause 11.4.1. of the contracts. *See* Ex. LL to the Leconte Aff.; *see also* Ex. 1 at ¶ 56.

75. On October 16, 2020, PRH and BMPAD agreed that the second shipment of diesel fuel for Order 005 would be increased by 40,000 barrels provided delivery was made on or about October 25, 2020. It was also agreed that the last shipment of diesel fuel under the contract would be on November 10, 2020. PRH also expressed its concern over BMPAD's long delays in making payment. *See* Ex. MM to the Leconte Aff.; *see also* Ex. 1 at ¶ 57.

76. On October 21, 2020, PRH again wrote to BMPAD requesting immediate payment of the remainder of the provisional invoice for Order 005 and confirmed future shipment arrival dates of October 25, October 31 and November 10. *See* Ex. NN to the Leconte Aff.; *see also* Ex. 1 at ¶ 58.

77. On October 22, 2020, despite not being paid by BMPAD for the fuel oil, PRH ordered the MT AQUILA L into port.

78. PRH's willingness to allow the AQUILA L to enter the port and discharge was

11

conditionally granted following a phone conversation held between PRH's President and high-ranking members of BMPAD who promised to authorize immediate payment of PRH's invoice. Although no payment had been received by nightfall, the AQUILA L began discharging its cargo of gasoline at 21:12. As per Intertek's report, the AQUILA L had on board 164,178.43 barrels of gasoline. *See* Ex. OO to the Leconte Aff.; *see also* Ex. 1 at ¶ 59.

79. On October 22, 2020, BMPAD approved the waiver requested by PRH for the displacement of the MT SM OSPREY. *See* Ex. PP to the Leconte Aff.; *see also* Ex. 1 at ¶ 60.

80. On October 23, 2020, PRH learned BMPAD was refusing to pay PRH the amount due and owing.

81. PRH instructed the MT AQUILA L to stop discharging at 06:16 that morning. 49,991.95 barrels had been delivered by that time. *See* Ex. 1 at ¶ 61.

82. On or about October 25, 2020, PRH learned that BMPAD obtained an *ex parte* court order granting BMPAD a "conservatory lien" over the AQUILA L and a right to discharge the cargo of gasoline.

83. Pursuant to the court's order, the MT AQUILA L resumed discharging at 21:18 on October 28, 2020. *See* Ex. 1 at ¶ 62.

84. PRH advised BMPAD that the MT SM OSPREY with 189,767 barrels of diesel fuel was scheduled to arrive in Haiti the next evening but would not enter Port-au-Prince until the situation with MT AQUILA L was resolved. A Certificate of Quality for the product onboard MT SM OSPREY was emailed from PRH to BMPAD, as was various shipping documents for the MT SM OSPREY, along with a reminder that the payment for Order 005 was overdue. The MT SM OSPREY never discharged in Haiti, resulting in additional damages being suffered by PRH. *See* Ex. QQ to the Leconte Aff.; *see also* Ex. 1 at ¶ 63.

85. BMPAD breached all three fuel contracts by (1) wrongfully seizing the MT AQUILA L and her shipment of fuel oil, for which BMPAD did not pay; (2) refusing to take delivery of the remaining shipments, which PRH already committed to deliver under the three fuel contracts; and (3) defaulting on payments due to PRH. *See* Ex. 1 at ¶ 64.

86. On October 28, 2020, PRH issued a partial final invoice for Order 005 in the amount of $26,486,860.20 relating to shipments provided by the AQUILA L, ENDEAVOUR II and SM OSPREY. *See* Ex. RR to the Leconte Aff.; *see also* Ex. 1 at ¶ 65.

87. On November 6, 2020, PRH issued three invoices for demurrage for MT SCF IRTYSH, MT CELSIUS ROSKILDE, and MT APOSTOLOS and deviation costs for the MT APOSTOLOS in the sum of $674,618.81. *See* Ex. SS to the Leconte Aff.; *see also* Ex. 1 at ¶ 66.

88. On December 9, 2020, PRH issued two invoices for the demurrage for the MT AQUILA L and MT ENDEAVOUR II totaling $398,500.00. *See* Ex. TT to the Leconte Aff.; *see also* Ex. 1 at ¶ 67.

89. On March 3, 2021, PRH issued five invoices for shifting, deviation, demurrage, freight, insurance and port costs for the MT ALPINE LIGHT, MT CITRON, MT SM OSPREY, MT MINERVA JULIE totaling $1,955,982.68. *See* Ex. UU to the Leconte Aff.; *see also* Ex. 1 at ¶ 68.

**IV. DAMAGES**

90. BMPAD owes PRH **$18,796,931.71** in respect of unpaid invoices for Orders 001-005. *See* Ex. VV to the Leconte Aff.; *see also* Ex. 1 at ¶ 69.

91. PRH also suffered damages of lost profits for the unfulfilled remainder of Order 005 and Order 006. The lost profits totaled **$4,053,535.00**. *See* Ex. 1 at ¶ 70.

92. Additionally, PRH suffered damages for accrued interest, as of February 28, 2021, totaling **$2,516, 506.40** on unpaid invoices at the rate of 8.25%, as specified in the fuel contracts. Interest continues to accrue. *See* Ex. WW to the Leconte Aff.; *see also* Ex. 1 at ¶ 71.

93. PRH also suffered damages of **$923,113.80** relating to the MINERVA JULIE. PRH's supplier charged PRH for unloading and reselling the fuel on the MINERVA JULIE after BMPAD breached the contracts and seized the cargo on the AQUILA L. See Ex. 1 at ¶ 72.

94. Lastly, PRH also suffered damages of not less than **$1,000,000** as a result of BMPAD's breach of contract relating to Orders 005 and 006because PRH could not take the minimum volume of fuel PRH agreed to take from its supplier. *See* Ex. 1 at ¶ 73.

95. PRH's total damage resulting from BMPAD's breach of the fuel contracts is currently **$27,290,086.91**, and damages continue to accrue. See Ex. 1 at ¶ 74.

96. PRH is entitled to costs and attorney's fees as well.

V. **The Rule B Action**

97. PRH commenced this action to obtain security for the claims described above and reserves its right to arbitrate all such disputes as well as such additional ones as may arise. In particular, PRH reserves its right to amend this complaint and to claim in the New York arbitration amounts based on claims alleged above but not yet fully quantified and to include such additional claims and damages as it may suffer as a result of BMPAD's breach of the three maritime contracts.

98. The principal amount of the claims for which PRH presently seeks security in this action is **$27,290,086.91.**

99. The claim with respect to the alleged breach of the three maritime contracts has been expensive to prepare and present to the New York arbitrators. Maritime Arbitrators in New

York routinely award interest, legal fees and arbitral costs to a successful party. Plaintiff estimates interest and legal costs will be in the sum of at least **$2,000,000**.

100. The total amount of PRH's claims for which PRH requests issuance of Process of Maritime Attachment and Garnishment is **$29,290,086.91**.

101. BMPAD cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but BMPAD is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District.

102. PRH believes BMPAD has assets in the possession of garnishee BB Energy based on financial information available to PRH.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

103. PRH repeats and realleges each and every allegation set forth above as if set forth at length herein.

104. As set forth above in detail, BMPAD breached the three maritime contracts it entered into with PRH.

105. As a direct and proximate result of BMPAD's breach of the three maritime contracts for the delivery of fuel to Haiti, PRH was damaged in a sum of not less than **$27,290,086.91.**

**AS AND FOR A SECOND CAUSE OF ACTION**
**(UNJUST ENRICHMENT)**

106. PRH repeat and reassert each and every allegation contained in the foregoing paragraphs as if set forth herein in full.

107. Alternatively, PRH is entitled to recover against BMPAD based on the doctrine of unjust enrichment because it directly benefitted, as set forth in detail above, from the receipt of fuel from PRH. which is did not pay for and it would be inequitable and unconscionable to allow BMPAD to retain those benefits to the detriment of PRH.

108. Further, PRH incurred significant demurrage costs while various vessel waited to be berthed in Haiti, for which BMPAD is responsible for.

109. BMPAD was unjustly enriched as a direct result of receiving the fuel and not paying demurrage, as required, to the detriment of PRH.

110. As a direct and proximate result of BMPAD's actions, PRH has suffered damages in a sum of not less than **$27,290,086.91.**

**WHEREFORE**, PRH prays:

A. That process in due form of law issue against BMPAD citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That since the BMPAD cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of BMPAD's tangible or intangible property or any other funds held by any garnishee in the district, including BB Energy, which are due and owing or otherwise the property of to the BMPAD up to the amount of **$29,290,086.91** to secure PRH's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That the U.S. Marshal be directed to serve process upon the garnishee BB Energy.

D. That this Court enter judgment for PRH's damages plus costs, or, in the alternative, retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

E. That PRH may have such other, further and different relief as may be just and proper.

Dated: June 15, 2021
Houston, Texas

Respectfully submitted,

*/s/ Keith B. Letourneau*
Keith B. Letourneau
BLANK ROME LLP
State Bar No. 00795893
Federal I.D. No. 20041
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 632-8609
Facsimile: (713) 228-6605
kletourneau@blankrome.com

*Attorney-in-charge for Plaintiff Preble – Rish Haiti, S.A.*

## CERTIFICATE OF SERVICE

This confirms that the U.S. Marshal has been or will be instructed to serve this application along with all other pleadings on the garnishee in accordance with Rule B of the Federal Rules of Civil Rules of Procedure Supplemental Rules for Certain Admiralty and Maritime Claims.

*/s/ Keith B. Letourneau*
Keith B. Letourneau

160579.06501/126151037v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PREBLE – RISH HAITI, S.A., | § § § | |
| Plaintiff, | § § | Civil Action No. |
| v. | § § | _____ |
| REPUBLIC OF HAITI, BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT, | § § § § § | Filed under Rule 9(h) Fed. R. Civ. P. (ADMIRALTY) |
| Defendants. | § § § | |

**VERIFICATION OF COMPLAINT/AFFIDAVIT**
**ADDRESSING DEFENDANT'S LACK OF PRESENCE IN THE JURISDICTION**

Pursuant to 28 U.S.C. §1746, Keith B. Letourneau, declares under the penalty of perjury:

1. I am a member of the bar of this Honorable Court and partner of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2. I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

5. I have also further evaluated whether Defendants Republic of Haiti and Bureau De Monétisation De Programmes D'aide Au Développement (collectively "BMPAD") are present within this district for purposes of Supplemental Admiralty Rule B of the federal Rules of Civil Procedure.

6. I have reviewed the Texas Secretary of State database, which reveals no listing, address or resident agent for service of process for BMPAD in Texas. As well, I have reviewed the Yellow and White Pages listings on the internet and found no listing or address for BMPAD within this district. Based upon the foregoing, I conclude that BMPAD are not found within this district.

Dated: June 15, 2021

_____
Keith B. Letourneau

Signed and sworn to before me the undersigned Notary Public for the State of Texas.

_____
Laurie Babin

LAURIE BABIN
ID #11731682
My Commission Expires
April 12, 2022