UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PREBLE-RISH HAITI, S.A.,** | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-CV-1953 |
| **REPUBLIC OF HAITI**, *et al*, | § § § | |
| Defendants. | § | |

### ORDER DENYING MOTION TO DISMISS AND
### REQUESTING RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Pending before this Court is Garnishee BB Energy, Inc's Motion to Dismiss for lack of subject-matter jurisdiction. (Doc. 18.) In light of the relevant law, arguments made in writing and orally to the Court, and Garnishee's written update to the Court dated July 26, 2021, the Court finds that the motion should be **DENIED** for the reasons stated below.

Pending also is Plaintiff Preble-Rish Haiti's Motion to Compel (Doc. 25)[1] and Motion to Stay (Doc. 30). Both motions are opposed. The Court requires an omnibus (single) response from Garnishee to the Motion to Compel and the Motion to Stay no later than Friday, August 13. A reply, if any, may be filed no later than Tuesday, August 17.

Finally, in light of developments in the related arbitration proceeding and Plaintiff's representation that the property at issue may ultimately be attachable under the New York Convention and Chapter Two of the Federal Arbitration Act, the stay of the previously issued Rule B attachment will remain in effect pending further order from this Court.

---

[1] Plaintiff has additional filed a Supplement to its Motion to Compel. (Doc. 29.)

### A. Factual Background

Plaintiff Preble-Rish Haiti, S.A. ("PRH") is a company organized under the laws of Haiti, with its principal place of business in Haiti. Defendants Republic of Haiti and Bureau De Monétisation De Programmes D'aide Au Développement ("BMPAD") are also foreign entities based in Haiti. In this dispute, PRH seeks to recover over $27 million from BMPAD for BMPAD's alleged refusal to pay PRH for fuel delivered to Haiti by vessel and for other damages resulting from that breach of contract. PRH has commenced arbitration in New York, pursuant to the arbitration clause in each of the three maritime contracts between the parties. In the meantime, PRH seeks to obtain security against BMPAD to enforce any final arbitral award.

In pursuit of that goal, PRH originally filed this action to invoke the Rule B process, which "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016); *accord* Fed. R. Civ. P. Supp. R. B(1)(a). "The rule has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Malin*, 817 F.3d at 244.

Specifically, PRH seeks attachment of assets in the possession of Garnishee BB Energy USA ("BB Energy"), which is located in Houston. PRH alleges, on information and belief, that BMPAD prepays BB Energy for fuel and, therefore, that BB Energy currently owns funds belonging to BMPAD. BB Energy has represented that it maintains an interest in the property to be attached and has accordingly invoked its right to a hearing challenging the attachment under

Rule E(4)(f),[2] arguing that this Court lacks subject-matter jurisdiction.

## B. This Court's Jurisdiction

Plaintiff's complaint asserts that this Court has admiralty jurisdiction under 28 U.S.C. § 1333, which confers original jurisdiction on federal district courts, exclusive of state court, over any "civil case of admiralty or maritime jurisdiction." However, there is a complication in this case—Defendants here are foreign sovereigns. As such, the Court's jurisdictional analysis is guided not by the admiralty jurisdiction statute but by the Foreign Sovereign Immunities Act ("FSIA"), which provides the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989). In *Argentine Republic*, the plaintiffs asserted jurisdiction pursuant to both 28 U.S.C. § 1333 (admiralty jurisdiction) and the Alien Tort Statute, but the Supreme Court held that, regardless of other potential bases for jurisdiction, the suit was barred where sovereign immunity applied. *Id.* at 432. The parties spend a considerable portion of the briefing arguing about whether there is admiralty jurisdiction, but because FSIA provides the "sole basis" for jurisdiction over foreign sovereigns such as Defendants here, the jurisdictional inquiry begins and ends with the FSIA.

There are two distinct issues at play here: first, whether Defendants are immune from *suit* under the FSIA, and second, whether Defendants are immune from *prejudgment attachment*. *See, e.g., S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 417 (2d Cir. 1983) ("Obviously waivers of immunity from suit or from execution of judgment have no bearing upon the question of

---

[2] Even though the precise nature of the property to be attached remains somewhat unclear, the Court finds that BB Energy has standing to invoke a Rule E(4)(f) challenge to the Rule B attachment, given its representation to the Court that it "does have an interest in the property at issue in this proceeding." (Doc. 26 at 1.)

3

immunity from prejudgment attachment."); 14A Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3662.3 (4th ed. 2021) ("In addition to the foregoing exceptions to immunity from subject-matter jurisdiction, the Foreign Sovereign Immunities Act codified a number of exceptions to foreign states' immunity from the attachment of or execution on its property. Although these parallel the jurisdiction-immunity exceptions to an extent, they in fact are distinct and their applicability is more limited.").[3]

### 1. Immunity from Suit (28 U.S.C. §§ 1604–07)

"Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission to the U.N. v. City of New York*, 551 U.S. 193, 197 (2007); 28 U.S.C. § 1604.[4] The exceptions are codified in §§ 1605–07. As Defendants are foreign states within the meaning of the statute, this Court lacks jurisdiction unless one of the exceptions applies. Plaintiff argues that Defendants—specifically, BMPAD—implicitly waived sovereign immunity to suit by agreeing to arbitrate in New York.

28 U.S.C. § 1605(a)(1) provides that a foreign state is *not* immune where it "has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." The

---

[3] This can also be inferred from the text and structure of the FSIA, which lists exceptions to immunity from suit in 28 U.S.C. §§ 1605–07, whereas the provisions that govern attachment of property are in §§ 1609–11. *See also Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 255 (2d Cir. 2002) ("The FSIA deals separately with immunity from jurisdiction (§ 1605) and immunity from execution (§ 1610).").

[4] 28 U.S.C. § 1604 states: "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." This statute works "in tandem" with 28 U.S.C. § 1330(a), which expressly confers original jurisdiction on district courts when a foreign state is *not* entitled to immunity under §§ 1605–07. *See Argentine Republic*, 488 U.S. at 434.

exception is a narrow one; the Fifth Circuit has stated that "implicit waivers [under FSIA] are ordinarily found in [only] three situations: (1) a foreign state agrees to arbitration in another country; (2) the foreign state agrees that a contract is governed by the laws of a particular country; or (3) the state files a responsive pleading without raising the immunity defense." *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993). "The implicit waiver clause of section 1605(a)(1) has . . . been narrowly construed; courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state *intended*." *Id.* (emphasis added); *see also Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) ("[W]e have held that implicit in § 1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity."); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 577 (2d Cir. 1993) (declining to find implicit waiver where a foreign government simply "agreed to arbitrate in a country other than itself" with no reference to the United States).

Each of the relevant contracts, which BMPAD drafted, contains identical arbitration provisions, which provide: "In the event of a dispute . . . under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators." Further: "The decision of the arbitrators shall be final, conclusive, and binding on all Parties." This unequivocal agreement to arbitrate within the United States is sufficient to demonstrate an intent to waive foreign sovereign immunity from suit. *See, e.g.*, *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340, 1351 (S.D.N.Y. 1988) ("The arbitration agreement in this case, which names New York as the forum for arbitration, fits within the narrowest reading of the [FSIA], and therefore, acts as a waiver of immunity for purposes of subject-matter

jurisdiction."). Indeed, courts have found implicit waiver on less ambiguous terms than those here: for example, the Second Circuit found that Argentina had impliedly waived FSIA immunity in a case where Argentina had agreed to submit its dispute to arbitration under the ICSID Convention,[5] and both the United States and Argentina were signatories of that convention. *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 84–85 (2d Cir. 2013). In contrast, in cases rejecting a finding of implicit waiver, courts generally do so because the arbitration clause does not mention the United States explicitly. *See, e.g.*, *Creighton*, 181 F.3d at 123 (declining to find implied waiver where Qatar had agreed to arbitrate in a state that had signed the New York Convention but not the United States explicitly). The same cannot be said here.

Thus, the arbitration provisions in the contracts suffice to demonstrate that Defendants intended to waive foreign sovereign immunity from suit.

### 2. Immunity from Prejudgment Attachment (28 U.S.C. §§ 1609–11)

The next question is whether Defendants are immune from prejudgment attachment. In addition to immunity from suit, FSIA provides that, by default, "the property in the United States of a foreign state shall be immune from attachment arrest and execution." 28 U.S.C. § 1609. This immunity is subject to the exceptions outlined in 28 U.S.C. § 1610. The relevant statutory subsection that governs exceptions to immunity from prejudgment attachment is § 1610(d), which provides:

> The property of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if--
> (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except

---

[5] Convention on Settlement of Investment Disputes between States and Nationals of Other States.

in accordance with the terms of the waiver, and
(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

As a threshold matter, BB Energy has standing to assert immunity from prejudgment attachment. *See Walker Int'l Holdings*, 395 F.3d at 233 (rejecting the argument "that it is the sovereign's exclusive right to raise the issue of sovereign immunity under the FSIA"). Thus, the presence or absence of the sovereigns—here, Haiti and BMPAD—is irrelevant to the issue of immunity, and Garnishee has the standing to raise the FSIA immunity arguments considered here.

The first issue is whether the property in question was "used for a commercial activity in the United States." 28 U.S.C. § 1610(d). "What matters under the statute is what the property is 'used for,' not how it was generated or produced." *Connecticut Bank of Com. v. Republic of Congo*, 309 F.3d 240, 251 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002). "If property in the United States is used for a commercial purpose here, that property is subject to attachment. . . . Conversely, even if a foreign state's property has been generated by commercial activity in the United States, that property is not thereby subject to execution or attachment if it is not 'used for' a commercial activity within our borders." *Id.* In *Connecticut Bank*, the Fifth Circuit considered whether assets held by Texas oil companies and owed to the Republic of Congo as royalty and tax payments were attachable under the FSIA. The court emphasized that the touchstone of the analysis is what the property is "used for"; it would be insufficient, for example, for a party to merely identify "any kind of nexus or connection to a commercial activity in the United States," or simply that "the property is revenue from or otherwise generated by commercial activity in the United States." *Id.* at 254.

The property in question here is used for a commercial activity in the United States. The

property is money allegedly paid by Defendants to a U.S.-based company in order to purchase fuel and other oil products. BB Energy seeks support in the *Connecticut Bank* case, but the example cited in that case of what would *not* constitute property "used for" a commercial transaction—"revenue from or otherwise generated by commercial activity"—is in fact the opposite of the property here. The assets allegedly owned by Defendants and under the control of Garnishee are not revenue generated by commercial activity; rather, they are assets Defendants have remitted for the purpose of purchasing a product from the U.S., in other words, the assets are literally being "used for" a commercial activity (here, the sale of petroleum products). Thus, the first element of § 1610(d) is met.

The second issue under § 1610(d) is whether Defendants have "explicitly waived" immunity. Unlike implied waiver of immunity from suit, waiver of immunity from prejudgment attachment must be explicit by the terms of the statute. Courts have interpreted this requirement strictly, requiring the waiver to be "clear and unambiguous." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003). As the Second Circuit put it: "We do not take lightly the congressional demand for explicitness. It would be improper for a court to subvert this directive by substituting a judicially reconstituted gloss on a facially unclear document for an unequivocal waiver by the foreign state." *S & S Mach. Co.*, 706 F.2d at 416. To be sure, the waiver does not have to "intone the precise words 'prejudgment attachment.'" *Id.* Rather, the waiver "must be explicit in the common sense meaning of that term"—*i.e.*, it must "demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country." *Id.* For example, an agreement to arbitrate a dispute in the United States, without more, is insufficient to meet § 1610(d)'s explicit waiver requirement. *See, e.g., de Sousa v. Embassy of*

*Republic of Angola*, 229 F. Supp. 3d 23, 31 (D.D.C. 2017) ("[T]he excerpted language appears to concern choice of law and agreements to arbitrate. Such clearly irrelevant language does not constitute an explicit waiver of immunity as required by the FSIA's § 1610(d)(1).")

Plaintiff argues that BMPAD explicitly waived prejudgment attachment immunity by contractually agreeing to provide for security in Plaintiff's favor. In support of this argument, Plaintiff points to Article 12 of each of the three contracts, which provides: "The buyer [BMPAD], at his expense, will provide the seller [Preble-Rish Haiti] with an international bank letter of credit (ESP 98) of irrevocable support issued by the Bank of the Republic of Haiti and confirmed by an international bank. The confirming bank must have a first quality credit rating acceptable to the seller." If BMPAD "fails to make payment on the agreed terms, the Seller [Preble-Rish Haiti] has the right to execute the international letter of credit (ESP 98)." This clause was subsequently amended by an agreement by BMPAD to prepay for fuel.

Plaintiff finds ample support for its position in *Banco de Seguros*, 344 F.3d at 262. In that case, a foreign reinsurer had moved to vacate interim arbitral orders requiring it to post pre-arbitration security by arguing, in part, that it was immune from prejudgment attachment under FSIA § 1609. The Second Circuit disagreed, finding an explicit waiver of immunity from prejudgment attachment under § 1610(d). The court's reasoning was based on two steps. First, Banco had signed an agreement with an arbitration clause stating that the arbitrators would be "relieved of all judicial formalities and may abstain from following the strict rules of law." *Id.* The Court read this clause "generously," consistent with the notion that "arbitrators have wide discretion to order remedies they deem appropriate . . . including the power to award pre-hearing security." *Id.* (citing *British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 516

(S.D.N.Y. 2000) (confirming an arbitration panels' interim order requiring reinsurer to post security before arbitration hearing); *Saint Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, 96 Civ. 7269, 1997 WL 357989, at *7 (S.D.N.Y. June 26, 1997)). Second, Banco in a separate clause of the agreement agreed to "apply for and secure delivery to [the plaintiff] a clean irrevocable Letter of Credit issued by a bank acceptable to such Insurance Department in an amount equal to [Banco's] proportion of said reserves." *Id.* at 261–62. The court held that this clause "inarguably demonstrate[d] that the parties embraced 'the usefulness of credit as the means of securing their respective rights and obligations and as a means of facilitating the transaction generally.'" *Id.* at 262 (quoting *Yasuda Fire & Marine Ins. Co. of Europe Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 350 (7th Cir. 1994)).

Here, just as the defendant in *Banco*, BMPAD agreed first to provide PRH with security in the form of a letter of credit, and subsequently by prepayment (when the contracts were amended to include prepayment). This agreement demonstrated that the parties had contemplated "the usefulness of credit," and later prepayment, "as the means of securing their respective rights and obligations" under the contract. This is sufficient to "satisif[y] the explicit waiver requirement of § 1610(d)," *id.*, and thus, the second element of § 1610(d) is met.

The third issue is "whether the purpose of the attachment is to secure satisfaction of a judgment that . . . may ultimately be entered against the foreign state, and not to obtain jurisdiction." 28 U.S.C. § 1610(d)(2). This element is satisfied on the face of the complaint—PRH seeks to obtain attachment not for the purpose of obtaining jurisdiction, but for the purpose of obtaining security for its claims pending in arbitration. *See Venus Lines Agency v. CVG Indus. Venezolana de Alumnio, C.A.*, 210 F.3d 1309, 1312 (11th Cir. 2000) (noting that in the context of

Rule B, for the purposes of § 1610(d) "so long as the purpose of the prejudgment attachment is to obtain security and not jurisdiction, it is irrelevant that an effect of the attachment is to obtain jurisdiction").

Thus, the requirements of § 1610(d) are met, and Defendants' property is not immune from prejudgment attachment. For these reasons, the Court has subject-matter jurisdiction under 28 U.S.C. § 1330. ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.").

### C. Further Proceedings in this Matter

As alluded to at the outset of this Order, this Court previously granted a Rule B attachment which has been stayed. Whether or not the Rule B attachment was proper depends, in part, on whether the underlying contracts at issue were maritime in nature. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) ("[A Rule B] attachment should issue only if a plaintiff establishes four factors: (1) that the plaintiff has a valid prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found within the district; and (4) that there is no statutory or maritime law bar to the attachment."). In light of Plaintiff's representation that the assets at issue may, in the alternative, be properly attached and attachable pursuant to the New York Convention and Chapter Two of the Federal Arbitration Act, the Court professes no opinion as to whether the Rule B attachment was proper. The Rule B attachment remains stayed at this time, pending further

developments in the related arbitration proceeding.

*   *   *

For the above reasons, Garnishee's Motion to Dismiss for lack of subject-matter jurisdiction (Doc. 18) is **DENIED**. The stay of the Rule B attachment remains in effect. The Court requires an omnibus response to Plaintiff's Motion to Compel and Motion to Stay no later than Friday, August 13. A reply, if any, should be filed no later than Tuesday, August 17.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on August 10, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE