United States District Court
Southern District of Texas
**ENTERED**
January 04, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PREBLE-RISH HAITI, S.A.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-01953** |
| | § | |
| **REPUBLIC OF HAITI,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & OPINION

On November 10, 2021, the Court held a hearing on the sovereign immunity defense Garnishee presented in its Motion to Dismiss. (Doc. 73.) The Court allowed the Parties to file supplemental briefing on the issues discussed on the record and deferred its ruling until after reviewing any supplemental briefing. (Minute Entry dated November 10, 2021.) Both Plaintiff Preble-Rish Haiti, S.A., and Garnishee BB Energy USA, LLC, filed supplemental briefs on November 17, 2021. (Docs. 113, 114.)

Having considered the Parties' extensive briefing, additional filings, and counsel's oral arguments, the Court now determines that this case is not subject to dismissal on sovereign immunity grounds. The Court sets forth its reasoning below.

## I. BACKGROUND

The Parties are well-aware of the facts in this litigation. Therefore, the Court recounts only the most relevant factual and procedural background.

On September 29, 2021, the Court granted Plaintiff's Motion for Leave to Amend its Complaint to include maritime tort claims against Defendants Republic of Haiti and Bureau De Monétisation De Programmes D'aide Au Développement (collectively "BMPAD"). (Doc. 58.)

The arbitration panel in New York allowed Plaintiff to amend its Initial Statement of Claim to add a maritime tort claim. (Doc. 79-1.)

On October 4, 2021, the Court held that attachment issues under Rule B based on the maritime tort claims. (Doc. 62.) The Court further ordered that Garnishee provide a list of its assets and submit to written discovery and a corporate representative deposition as to BMPAD's assets in its possession.

Garnishee subsequently provided a report stating that it held over $1 million in credit from BMPAD at the time of the original writ of attachment on July 1, but that it now currently holds no assets. This disclosure indicates that the $1 million was dissipated, though the parties disagree as to whether such dissipation was lawful. Along with this disclosure, Garnishee filed a Motion for Reconsideration as to the Court's discovery order. (Doc. 63.) Garnishee also filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim. (Doc. 73.)

Meanwhile, Plaintiff began working with the U.S. Marshal to effect daily service of writs and filed a Motion to Require BB Energy to Post Security and to Permit Daily Service of Writ of Attachment. (Doc. 64.) In response to the daily service, Garnishee filed a Motion for Protective Order. (Doc. 75.)

At the October 25 hearing on these various motions, the Court denied the Motion for Protective Order, deferred consideration of the other motions, and ordered Garnishee to comply with the Court's previous discovery order.

Garnishee appealed this order to the U.S. Court of Appeals for the Fifth Circuit, seeking a stay of discovery. Shortly thereafter, the Fifth Circuit held that "[a] district court must rule on an immunity defense properly raised in a motion to dismiss before allowing any discovery that is not 'ordered circumspectly and only to verify allegations of specific facts crucial to an immunity

determination.'" *Preble-Rish Haiti, S.A. v. BB Energy USA, LLC*, No. 21-20534 (5th Cir. Nov. 4, 2021). Because the discovery Plaintiff requested allegedly exceeded the scope of discovery allowed by the Fifth Circuit, BB Energy refused to comply with Plaintiff's discovery requests. Plaintiff agreed not to continue pursuing discovery until the sovereign immunity defense was adjudicated and sought an expedited hearing on the matter.

The Court held a hearing on November 10, 2021. It took under advisement the question whether the case should be dismissed based on Defendants' sovereign immunity. It allowed the Parties to submit supplemental briefing on the issue. The Parties did so, and the Court considered their briefing in reaching its decision.

## II.   SOVEREIGN IMMUNITY

BB Energy asserts immunity from suit[1] under the Foreign Sovereign Immunities Act ("FSIA") on PRH's newly added tort claims of unjust enrichment, fraud and maritime fraud, and maritime conversion.

### A.  Discussion

As a threshold matter, BB Energy has standing to raise the FSIA immunity arguments considered here. *See Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004) (rejecting the argument "that it is the sovereign's exclusive right to raise the issue of sovereign immunity under the FSIA"). The continued absence of Defendants does not prevent the Court from determining whether the case should be dismissed based on their sovereign immunity.

Plaintiff argues that BMPAD, which drafted the contracts at issue, implicitly waived immunity from suit by agreeing to arbitrate in New York. *See Rodriguez v. Transnave Inc.*, 8 F.3d

---

[1] BB Energy also asserts immunity from pre-judgment attachment, but the Court previously rejected this argument. *See* Order Denying Motion to Dismiss and Requesting Response to Plaintiff's Motion to Compel, Doc. 32, at 6-11.

284, 287 (5th Cir. 1993) (setting forth situations where implicit waiver under the FSIA is ordinarily found, including when "a foreign state agrees to arbitration in another country"). Indeed, the Court has previously found that BMPAD implicitly waived immunity under this exception—at least as to contract claims, the only ones at issue at the time of that ruling. *See* Order Denying Motion to Dismiss and Requesting Response to Plaintiff's Motion to Compel, Doc. 32, at 4-6.

The question now is whether BMPAD also waived immunity from suit as to non-contract claims—namely, maritime tort claims. Each of the relevant contracts contains identical arbitration provisions, which provide: "In the event of a dispute . . . under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators." Further, "[t]he decision of the arbitrators shall be final, conclusive, and binding on all Parties." Garnishee argues that these arbitration provisions are limited to contract claims. Plaintiff, on the other hand, asserts that they should be broadly construed to apply to the tort claims Plaintiff added in its Amended Complaint. (Doc. 61.)

In determining the scope of an arbitration agreement that falls under the Federal Arbitration Act ("FAA"), the court must apply the "federal substantive law of arbitrability." *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24 (1983)). BB Energy contends that *Haitian* law does not permit arbitration against governmental entities. The Court dismisses this argument on grounds of collateral estoppel, as the New York state court that heard BMPAD's petition to stay arbitration has already ruled that the Republic of Haiti and Bureau De Monétisation De Programmes D'aide Au Développement "fail[ed] to establish that the arbitration provisions are illegal under Haitian law or to otherwise invalidate the agreements they drafted." Doc. 56-1. The Court, therefore, applies U.S. federal law in construing the arbitration provisions here.

Federal law on arbitrability requires courts to apply ordinary state law principles of contract construction. *See Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995)). In New York, "[i]t is the policy of th[e] State to favor and encourage arbitration"; "[t]hat policy dictates that incidental tort claims which are integrally linked to an arbitrable dispute be submitted for resolution in arbitration." *Brandle Meadows, LLC v Bette*, 84 AD3d 1579, 1580 (3d Dept 2011) (citations omitted). "To that end, exclusion of a substantive issue from arbitration generally requires specific enumeration in the arbitration clause itself." *Id.* (emphasis added). This is consistent with federal policy on arbitrability. *See*, *e.g.*, *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25; *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989).

The key language in the contracts at issue here is: "[i]n the event of a dispute . . . **under this Contract** . . . ." Other courts have considered whether similar language should be construed broadly to include related non-contract claims, such as the maritime tort claims Plaintiff alleges in this case.

In *Kinoshita*, the Second Circuit found that an arbitration provision providing for arbitration of "any dispute or difference . . . aris[ing] under" the contract containing the clause was not sufficiently broad to require arbitration of a claim alleging fraudulent inducement of the contract. 287 F.2d 951, 953 (2d Cir.1961). However, the Second Circuit has since discredited this line of cases. *See ACE Capital Re Overseas Ltd v. Cent. United Life Ins. Co.*, 307 F.3d 24, 33 (2d Cir.2002) ("As a result of [later Second Circuit cases], the authority of *Kinoshita* is highly questionable in this Circuit"); *Louis Dreyfus Negoce*, 252 F.3d 218, 225-26 (2d Cir.2001) ("In [*Kinoshita*] . . . we intimated that the use of the phrase 'arising under' an agreement, in an

arbitration clause, indicated that the parties intended the clause be narrowly applied. We have, however, since limited this holding to its facts, declaring that absent further limitation, only the precise language in *Kinoshita* would evince a narrow clause."); *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984) ("We decline to overrule *In re Kinoshita*, despite its inconsistency with federal policy favoring arbitration . . . because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision."). Therefore, in these later cases, the Second Circuit found that language similar, but not identical, to the language in *Kinoshita* warranted a broad construction. *See*, *e.g.*, *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194-195 (finding that an arbitration clause requiring arbitration of "any question or dispute . . . aris[ing] or occur[ring] under" the agreement was sufficiently broad to reach claims of fraud in the inducement); *Louis Dreyfus Negoce*, 252 F.3d at 226 (holding that *only* the exact phrase "arising under" limits arbitration to a literal interpretation or performance of the contract). Courts in other jurisdictions have similarly observed the now-questionable validity of *Kinoshita*. *See*, *e.g.*, *Battaglia v. McKendry*, 233 F.3d 720, 725–26 (3d Cir. 2000); *Cook v. PenSa, Inc.*, No. 13-CV-03282-RM-KMT, 2014 WL 3809409, at *15 (D. Colo. Aug. 1, 2014).

Like the Second Circuit, the Fifth Circuit also counsels broad construction of arbitration provisions. Garnishee cites *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.* to support its contention that the provisions at issue here are narrower than arbitration clauses calling for arbitration of any dispute "related to" or "connected with" a contract. 139 F.3d 1061, 1067 (5th Cir. 1998). But the Fifth Circuit itself recently questioned *Pennzoil*'s relevance:

> To be sure, in Pennzoil . . . we distinguished the "broad" arbitration clauses at issue there *from "arising out of" clauses that we described as narrow. But that classification in* Pennzoil *was in* dicta*; it opined on contract language not at issue in the case . . . Moreover,* Pennzoil

*stands alone in this court's jurisprudence compared to our consistent "broad" holdings both before and after.*

*Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021) (holding that a settlement agreement with a clause requiring arbitration of "any action arising out of" the agreement should be broadly construed).

Based on the federal and New York state policies on arbitration, as well as Second and Fifth Circuit caselaw instructing broad construction of arbitration provisions, the Court concludes that the arbitration provisions here are <u>not</u> limited to literal interpretation or performance of the contracts. Therefore, the maritime tort claims Plaintiff has alleged are subject to arbitration under the contracts at issue.

The Court finds that BMPAD, which drafted this provision allowing for arbitration of tort claims under the contract, implicitly waived immunity from suit by agreeing to arbitrate in New York. Accordingly, Garnishee's sovereign immunity defense is **DENIED**.[2]

## III.   DISCOVERY

Since the Court has denied the sovereign immunity defense, discovery no longer need be limited to "verify[ing] allegations of specific facts crucial to an immunity determination." *Preble-Rish Haiti, S.A. v. BB Energy USA, LLC*, No. 21-20534 (5th Cir. Nov. 4, 2021). The Court now orders merits discovery as to Defendants' property held by BB Energy.

Specifically, the Court **ORDERS** that Garnishee: (1) respond to Plaintiff's written discovery by January 18, 2022, and (2) facilitate deposition of a corporate representative of BB Energy concerning the property of Defendants held by BB Energy, including its description,

---

[2] The Court has yet to rule on Garnishee's other alleged grounds for dismissal.

handling, treatment, transfers, and disposition since June 30, 2021; the deposition should occur by January 28, 2022.

The Court further **ORDERS** that the Parties file a joint status report as to this discovery by January 31, 2022. The court trusts and hopes that the Parties can conduct discovery of appropriate scope without the Court's intervention.

## IV.    MISCELLANEOUS SUBMISSIONS

Since November 10, the Parties have submitted at least eight letters, numerous emails, and additional miscellaneous documents to the Court regarding, *inter alia*, developments in related cases in other jurisdictions. In many of these correspondences, Plaintiff and Garnishee fervently objected to the other Party's basic factual and legal representations. To facilitate the Court's efficient and effective adjudication of this litigation, it **ORDERS** as follows:

Should Plaintiff or Garnishee seek to notify the Court of a development, it should first confer with the other Party. Having determined that the development is of sufficient relevance and importance, the Parties should then submit notice in the form of a joint status report. The Court will consider letters filed in violation of this procedure only in *bona fide* emergency circumstances.

\*        \*        \*

Based on the foregoing, Garnishee's sovereign immunity defense is **DENIED**.

The Court **ORDERS** Garnishee to submit to written discovery and a corporate representative deposition. The Court will rule on pending motions—including other alleged grounds for dismissal in Garnishee's Motion to Dismiss—after the Parties complete this discovery.

Finally, the Court **ORDERS** the Parties to cooperate with one another to notify the Court of pertinent developments, as set forth above.

**IT IS SO ORDERED.**

8 / 9

**SIGNED** at Houston, Texas, on January 4, 2022.

Keith P. Ellison
United States District Judge